**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **CODING TECHNOLOGIES, LLC,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**BNSF RAILWAY COMPANY,**<br><br>        **Defendant.** | C.A. No. 17-1847-RGA |

**DEFENDANT BNSF RAILWAY COMPANY'S REPLY IN SUPPORT OF ITS
RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 Telephone
(302) 652-0607 Facsimile
janderson@fr.com

*Attorney for Defendant
BNSF Railway Company*

Dated:  January 12, 2018

## **TABLE OF CONTENTS**

**Page(s)**

I.   THE PATENT-IN-SUIT IS INVALID ...................................................................................1

    A.   *Alice* Step One: Decoding data is an abstract idea. ..........................................1

    B.   *Alice* Step Two: The claims recite no inventive concept. ...............................4

II.  THE PRESUMPTION OF VALIDITY AND THE CLEAR AND CONVINCING
STANDARD ARE INAPPLICABLE ....................................................................................7

III. CONCLUSION ..........................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)..................................................................................................1, 4, 7

*Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016).................................................................................................7

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014).................................................................................................5

*Coding Techs. v. Chevron*,
  No. 1:17-cv-1454 (D. Del.).......................................................................................................2

*Coding Techs v. Keller Williams Realty, Inc.*,
  No. 2:17-cv-616 (E.D. Tex.).....................................................................................................2

*Coding Techs. v. Omni Hotels Corp., et al*,
  No. 1:17-cv-1847 (D. Del.).......................................................................................................2

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)............................................................................................3, 7

*Digitech Image Techs., LLC v. Elec. For Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014).................................................................................................2

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)............................................................................................3, 6

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)............................................................................................4, 5

*Kaavo Inc. v. Amazon.com Inc., et al.*,
  No. CV 15-638-LPS-CJB, 2016 WL 6562038 (D. Del. Nov. 3, 2016)....................................7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012)..............................................................................................................6

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  No. CV 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016)..........................................7

*OpenTV, Inc. v. Apple, Inc.*,
  No. 14-CV-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015)....................................7

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)......................................................................................1, 2, 3, 6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring).............................................................7

**Statutes**

35 U.S.C. § 282.....................................................................................................................7

BNSF requests that the Court grant its Motion to Dismiss because, as confirmed by Plaintiff's opposition, the Patent-in-Suit does not embrace patent-eligible subject matter. Plaintiff has not properly raised any material issue that could pull the patent, as written, out of the realm of patent-ineligibility. BNSF's motion should be granted.

I.   THE PATENT-IN-SUIT IS INVALID

   A.   *Alice* Step One: Decoding data is an abstract idea.

Coding Technologies has failed to establish that the claims of the Patent-in-Suit are directed to anything but the abstract idea of data recognition and retrieval. The Federal Circuit confirmed that such claims, which merely decode a barcode like a QR code and then retrieve information based on the decoded information, are patent-ineligible. *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017).

In *Secured Mail*, the Federal Circuit found claims directed to encoding and decoding a QR code invalid under both *Alice* steps. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device" *Id*. at 910-11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well-known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id.* at 912. The idea underlying Coding Technologies' asserted claims is just as abstract as that of the *Secured Mail* claims, if not nearly identical. Coding Technologies' asserted claims do not include any specific limitations or steps regarding the format of the "code pattern" or the actual decoding of that data. Rather, all of the steps of the method claims and components of the system claims are directed to

the generic, conventional ideas of reading a pattern, decoding the pattern, and then doing something conventional based upon the decoded information. Because they are written in such broad, functional language (as confirmed by the plethora of defendants Coding Technologies has sued across various industries),[1] the claims risk preempting all use of the abstract idea of data recognition and retrieval. *See, e.g., Digitech Image Techs., LLC v. Elec. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

Coding Technologies' attempt to distinguish its claims from the ones in *Secured Mail* lack merit. In particular, Coding Technologies claims that the "barcodes in [*Secured Mail*] were simply scanned and decoded," but the *Secured Mail* "claims did not call for capturing a photographic image of the barcode and processing the image to extract the barcode from the photographic image." (Opp. at 15.) But Coding Technologies ignores that the recited "reception device" in the *Secured Mail* claims did indeed capture the image and then process it to extract additional data related to the mail object. *Secured Mail*, 873 F.3d at 907 (recognizing that the claims require that the reception device "be used to scan the encoded data and display the resulting data on the reception device's display screen" and "a customer might scan the QR code and be directed straight to her account rather than having to log in to access the account").

The Coding Technologies claims go no further. Indeed, the specification indicates that the image can be converted into digital data using a generic "scanner, a PC camera, a digital camera, a Web camera or the like," ('159 Patent at 10:14–17), and the image can be "decoded" using a

---

[1] Coding Technologies has sued at least 47 defendants across a wide variety of industries, including the oil, real estate, hotel, railway, and restaurant industries, for those defendants' mere use of a QR code. *See, e.g., Coding Techs. v. Omni Hotels Corp., et al*, No. 1:17-cv-1847 (D. Del.), *Coding Techs v. Keller Williams Realty, Inc.*, No. 2:17-cv-616 (E.D. Tex.); *Coding Techs. v. Chevron*, No. 1:17-cv-1454 (D. Del.).

generic "one-dimensional or two-dimensional code recognizer depending on the type of the barcode 60," (*id.* at 10:20–23). No further details are provided. Thus, Coding Technologies' attempt to distinguish *Secured Mail* fails.

Coding Technologies also relies on *DDR*, which held claims that "specif[ied] how interactions with the Internet are manipulated to yield a desired result" and recited "a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet" were patent-eligible. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014). Unlike the claims in *DDR*, the computers and computer-related features recited in Coding Technologies' claims are not directed to an improvement in computer technology but instead recite generic, off-the-shelf components implemented in a conventional way to retrieve, process, communicate, and send data. *See id.* at 1259; *see also Secured Mail*, 873 F.3d at 912 (rejecting plaintiff's analogy to *DDR* of claims directed to decoding a QR code because the claims were "non-specific and lack[ed] technical detail"). Coding Technologies' reliance on *DDR* is thus misplaced.

Likewise, Coding Technologies' reliance on *Enfish* lacks merit. That case involved claims that were directed to specific improvements to computer technology. The correct inquiry is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). The claims of the Patent-in-Suit focus on the latter: they are directed to the abstract idea of "processing," "decoding," "transmitting," and "receiving" data, and merely invoke computer components and generic processes to practice the claimed process. They do not recite an

improvement to how the components are interconnected, how they are used, or how they are coded to perform some unconventional or inventive function. Rather, they simply claim the idea itself and add some "apply it with a computer" language. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

Regardless of whether the intended goal of the patent was to "overcome[] a problem specifically arising in the realm of computer networks" (Opp. at 3), Coding Technologies fails to point to anything particular in the claims themselves about how that goal is accomplished. In particular, no detail is disclosed in the claims as to how the "code pattern" is unlike a basic barcode or QR code such that it would require any specialized "decoding." *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming patent ineligibility where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the [web browser] state is not described, although this is stated to be the essential innovation"). Coding Technologies confirms that the claims fail to provide any specialized decoding method that improves computer functionality, stating simply that "[t]he extracted code pattern is decoded by the processor of the user terminal" and that "[t]he decoding process results in code information." (Opp. at 13-14.) Coding Technologies points to no specialized equipment or programming required or disclosed in either the claims or specification that would render the claims not abstract. The claims thus fail the first *Alice* step.

B.   *Alice* **Step Two: The claims recite no inventive concept.**

Coding Technologies does not seriously attempt to argue that any of the claims supply an inventive concept. Instead, Coding Technologies accuses BNSF of "strip[ping] each element of the majority of its wording, and then argu[ing] that what remains is generic." For this criticism to have merit, the omitted content must contain substance that would supply the claim with an inventive concept. However, despite Coding Technologies' conclusory assertions, phrases such as

-4-

"processing . . . the photographic image of the code pattern to extract the code pattern from the photographic image" include nothing more than generic terms. Such conventional descriptions lack the "something more" required to find an inventive concept. Other functions such as "obtaining a photographic image," "decoding," "transmitting," and "receiving" are conventional tasks that an off-the-shelf personal computer, scanner, and modem are unquestionably capable of and, in fact, routinely do. And neither the claims nor Coding Technologies describe how the decoding is supposed to be achieved in any non-conventional manner. The Patent-in-Suit is exemplary of the results-over-implementation claiming that the Federal Circuit has held to be ineligible for patent protection. *See Internet Patents*, 790 F.3d at 1348. No special, inventive programming or algorithm is identified in the claims.

As detailed in BNSF's opening brief, the asserted claims recite steps that are well-understood conventional activities for computers and network communication: "processing," "decoding," "transmitting," and "receiving" data. As acknowledged by the specification, a general-purpose computer and conventional network infrastructure can perform these steps with minimal, non-specialized programming. For example, the code pattern is converted from analog to digital data using "[a] scanner, a PC camera, a digital camera, a Web camera *or the like*." ('159 Patent at 10:14-17 (emphasis added).) The extracted code pattern is then "decoded" using a standard "one-dimensional or two-dimensional code recognizer depending on the type of barcode 60." (*Id*. at 10:20-23.) These steps show no inventiveness in the claims. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*,765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *see also Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to

a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."). Rather, they merely describe the functions of the abstract idea itself, without particularity, which is not enough under step two. *See Secured Mail*, 873 F.3d at 912 (finding that claims directed to encoding and decoding a QR code failed *Alice*'s second step because the claims were "non-specific and lack[ed] technical detail").

Coding Technologies also asserts that the claimed invention is "directed to improvements in computer functionality and solving a technological problem." (Opp. at 17.) The problem identified by the Patent-in-Suit is peoples' difficulty with remembering URL information, which Coding Technologies asserts that the Patent-in-Suit alleviates by providing a method to scan a visual code. *Id.* However, this problem concerns human capability, not computer functionality. Indeed, applicants acknowledged that they did not invent the concept of recognizing and retrieving information associated with a code pattern like a bar code or a QR code. ('159 Patent at 11:1-5.) Any purported "improvement" is directed to specifying the type of data (i.e., a URL) that is stored in the bar code, which does not render the claims patent eligible. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297-98 (2012) (claim is not meaningfully limited if it includes pre- or post-solution activity). This is especially true since the Patent-in-Suit acknowledges that a standard "scanner" and "decoder" can be used to implement its claims. ('159 Patent at 10:14-17, 10:20-23.) No modifications to these conventional components are disclosed or claimed in order to decode a URL. In other words, the purported "improvement" is not directed to an inventive way a code is scanned or decoded. Instead, the invention purportedly improves the ability of humans to retain information, not the ability of computers to perform technologically. This "improvement" has no bearing on computer functionality as did the patents in *Enfish* and

*DDR*, which related to the organization and manipulation of computer data. The claims thus also fail step two of *Alice*.

## II. THE PRESUMPTION OF VALIDITY AND THE CLEAR AND CONVINCING STANDARD ARE INAPPLICABLE

Coding Technologies incorrectly asserts that (i) patent-eligibility is subject to a "clear and convincing" evidentiary standard, (ii) "issued patent claims carry a statutory presumption of validity," and (ii) BNSF has a "heavy burden" of establishing the ineligibility of the claims. (Opp. at 6, 9, 12, 18.) 35 U.S.C. § 282, which governs the presumption, explicitly applies to invalidity for failure to meet a condition of patentability (e.g., §§ 102 or 103), failure to comply with § 112, or failure to comply with § 251, or "other facts or acts made a defense" by that section. It does not refer to § 101. Consequently, it is no surprise that courts have differentiated between validity issues and eligibility issues. *See Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, 841 F.3d 1288, 1306-07 (Fed. Cir. 2016). Thus, patents are not presumed eligible. *See generally Alice*, 134 S. Ct. 2347 (not mentioning the existence of a presumption of eligibility).[2]

Additionally, because Coding Technologies has failed to identify any questions of fact, the burden of proof is irrelevant to this analysis. *See Kaavo Inc. v. Amazon.com Inc., et al.*, No. CV 15-638-LPS-CJB, 2016 WL 6562038, at *2 (D. Del. Nov. 3, 2016) ("And as to the instant Motions, which were filed at the pleading stage (a stage at which any facts of record that are clearly in dispute are to be construed in the light most favorable to the plaintiff), the 'clear and convincing' standard of proof should not come into play at all."); *see also MAZ Encryption Techs. LLC v.*

---

[2] *See also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) ("The reasonable inference . . . is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.") (citation omitted); *OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (declining to apply presumption of eligibility to Section 101 consideration).

*Blackberry Corp.*, No. CV 13-304-LPS, 2016 WL 5661981, at *4 (D. Del. Sept. 29, 2016) ("Patent eligibility is a question of law.").

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be granted.

Dated: January 12, 2018                                    Respectfully submitted,

                                                           By: */s/ Jeremy D. Anderson*
                                                              Jeremy D. Anderson (#4515)
                                                              FISH & RICHARDSON P.C.
                                                              222 Delaware Ave., 17th Floor
                                                              P.O. Box 1114
                                                              Wilmington, DE 19801
                                                              (302) 652-5070 Telephone
                                                              (302) 652-0607 Facsimile
                                                              janderson@fr.com


                                                           **ATTORNEY FOR DEFENDANT
                                                           BNSF RAILWAY COMPANY**